IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | |
|---|---|
| MCE Automotive, Inc., d/b/a Toyota of Greer; and MCE Cars, Inc., d/b/a Kia of Greer, <br><br>           Plaintiffs,<br><br>v.<br><br>National Casualty Co., and Susan Wetherald, as Permanent Guardian and Conservator of Patricia A. Kaufman, a vulnerable adult,<br><br>           Defendants. | C/A No. 6:11-1245-TMC<br><br>**OPINION & ORDER** |

This matter is before the Court on an Amended Motion for Partial Summary Judgment filed by Plaintiffs MCE Automotive, Inc., d/b/a Toyota of Greer, and MCE Cars, Inc., d/b/a Kia of Greer (collectively "MCE"), and a Motion for Summary Judgment filed by Defendant National Casualty Company ("National Casualty"). (Dkt. # 36 and 55). Responses and replies have been filed. (Dkt. # 41, 42, 63, 65). A hearing was held on June 1, 2012, and the court took these motions under advisement. For the reasons set forth below, MCE's Motion for Summary Judgment is denied and National Casualty's Motion for Summary Judgment is granted.

**I. Background/Procedural History**

This matter stems from an underlying state court action brought on December 29, 2009, by Plaintiff Susan Wetherald ("Plaintiff"), as permanent guardian and

conservator of Patricia A. Kaufman ("Kaufman") against MCE in which Wetherald alleges that MCE took advantage of Kaufman, a vulnerable adult, by selling her a large number of cars for herself and others. *Susan Wetherald as Permanent Guardian and Conservator for Patricia A. Kaufmann v. MCE Automotive, Inc., d/b/a Toyota of Greer; MCE Cars, Inc., d/b/a Kia of Greer; Eugene Black; and David Alan Perry*, C.A. No. 2009-CP-23-11039 (filed Dec. 29, 2009) ("Underlying Complaint"). The underlying complaint asserts six causes of action against MCE: 1) exploitation of a vulnerable adult; 2) civil conspiracy, 3) conversion, 4) illegal and unenforceable contract; 5) unfair trade practices; and 6) negligence. (Dkt. # 1 Attach. # 1 - State Court Compl.).

At the time of the cars were sold to Kaufman, between July 2, 2007, and March 9, 2009, MCE had several liability insurance policies with National Casualty. After the underlying action was filed, MCE gave notice of the lawsuit to National Casualty and requested National Casualty defend them in the action. On January 12, 2010, National Casualty issued a denial of coverage letter. On February 16, 2010, MCE responded to the denial arguing that under the "Garage Coverage," National Casualty was obligated to defend suits alleging "bodily injury" or "property damage" resulting from an "accident," and the Underlying Complaint alleges such claims. On March 4, 2010, National Casualty responded by stating that the Underlying Complaint did not present any possibility of recovery of damages due to "bodily injury" or "property damage." MCE then filed this action alleging bad faith and breach of contract claims against National Casualty.

## II. The Policies

At the time Kaufman purchased the cars, MCE had four liability insurance policies with National Casualty which MCE contends provide coverage for the claims in

2

the Underlying Complaint: Commercial General Liability coverage, Garage Liability coverage, Statute and Title Error and Omissions ("E&O") coverage, and Customer Complaint coverage.

The Commercial General Liability policy provides coverage for damages because of "bodily injury'" or "'property damage" if caused by an "occurrence." "Occurrence " is defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." "Accident" is not defined in the policy. Further, the Commercial General Liability coverage contains an exclusion for "'bodily injury,' 'property damage' or 'personal and advertising injury' arising out of "garage operations."

Under the Garage Liability policy, coverage is provided for claims alleging "bodily injury" or "property damage" caused by an "accident" resulting from "'garage operations'" other than ownership, maintenance or use of covered 'autos.'"

The E & O policy provides coverage for "errors and omissions" in the conduct of "garage operations" resulting in:

> a. an alleged violation of any federal, state, or local regulation or statute which regulates truth in lending; truth in leasing; odometer or engine hour disclosure; prior damage disclosure; competitive auto parts law; or disclosures required in the sale of used motor vehicles . . . .
>
> b. Failure to properly specify the security interest of the lien holder of the interest of the legal owner on motor vehicle title papers . . . .

The E&O coverage excludes claims caused by any dishonest, fraudulent or criminal acts, arising from any intentional act committed by the insured, or for "any bodily injury, property damage (including loss of use), mental anguish, mental injury, fright, shock, humiliation."

The Customer Complaint policy provides coverage for "defective goods and

services" arising out of "garage operations" and excludes "[a]ny dishonest, fraudulent, criminal or malicious act committed by any 'insured'" or "[a]ny 'bodily injury' [or] 'property damage' . . . ."

### III. Standard of Review

Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). In deciding whether a genuine issue of material fact exists, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in his favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248. A llitigant "cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another." *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, disposition by summary judgment is appropriate." *Monahan v. County of Chesterfield*, 95 F.3d 1263, 1265 (4th Cir.1996).

### IV. Discussion

National Casualty contends it should be granted summary judgment as there is no possibility of coverage under any of the above policies. In regard to the Commercial Liability and Garage Coverage, National Casualty contends that the Underlying Complaint fails to allege an "accident," "occurrence," or "property damage" and the "intentional act" exclusion applies. Further, National Casualty contends that there are no allegations in the Underlying Complaint which would trigger the E&O endorsement and

4

there is no possibility of coverage under the Customer Complaint endorsement.

MCE contends they should be granted summary judgment as National Casualty has a duty to defend and National Casualty has acted in bad faith. Alternatively, MCE is seeking a judgment declaring that they have a right to share information regarding the coverage issues with the Plaintiff in the underlying action so that the Underlying Complaint may be amended if appropriate.

### A. Coverage

Under South Carolina law, questions of coverage and the duty to defend under an insurance policy generally "are determined by the allegations of the complaint. If the underlying complaint creates a possibility of coverage under an insurance policy, the insurer is obligated to defend." *City of Hartsville v. South Carolina Mun. Ins. & Risk Fin. Fund*, 677 S.E.2d 574, 578 (S.C. 2009) (citation omitted). However, "an insurer has no duty defend an insured where the damage was caused for a reason unambiguously excluded under the policy." *B.L. G. Enters., Inc. v. First Fin. Ins. Co.*, 514 S.E.2d 327, 330 (S.C. 1999). In South Carolina, "[i]nsurance policy exclusions are construed most strongly against the insurance company, which also bears the burden of establishing the exclusion's applicability." *Owners Ins. Co. v. Clayton*, 614 S.E.2d 611, 614 (S.C. 2005). While the allegations in the underlying complaint are key to a court's analysis, the determination of the existence of a duty to defend is "not strictly controlled by [those] allegations" but "may also be determined by facts outside of the complaint that are known by the insurer." *USAA Prop. & Cas. Ins. Co. v. Clegg*, 661 S.E.2d 791, 798 (S.C. 2008).

### I. Commercial General Liability and Garage Coverage

As noted above, under the Commercial General Liability policy, coverage is provided for claims alleging "bodily injury" or "property damage" caused by an "occurrence." "Occurrence" is defined as an accident, including continuous or repeated exposure to substantially the same general harmful conditions." Under the Garage Liability policy, coverage is provided for claims alleging "bodily injury" or "property damage" caused by an "accident" resulting from "'garage operations'" other than ownership, maintenance or use of covered 'autos.'" Accordingly, for coverage under either of these policies, the bodily injury or property damage must be the result of an accident.

In South Carolina, "in the absence of a prescribed definition in the policy, the definition of 'accident' is '[a]n unexpected happening or event, which occurs by chance and usually suddenly, with harmful result, not intended or designed by the person suffering the harm or hurt.'" *Auto Owners Ins. Co., Inc. v. Newman*, 684 S.E.2d 541, 543 (S.C. 2009).

MCE contends the Underlying Complaint alleges an accident and property damage because the allegations assert the insured "knew or should have known" that Kaufman lacked capacity which MCE contends alleges claims for both an intentional tort and negligence. Further, MCE contends that National Casualty's duty to defend may also be determined by facts outside of the complaint. National Casualty contends that because all of the causes of action in the Underlying Complaint either specifically allege intentional conduct, incorporate allegations of intentional conduct, or assert causes of action that require intentional conduct, any bodily injury or property damage was not caused by an accident. The court agrees.

In South Carolina, whether an insurance company has a duty to defend and indemnify is determined by the allegations in the complaint. *Mfrs. & Merchants Mut. Ins. Co. v. Harvey*, 498 S.E.2d 222, 227 (S.C. Ct.App. 1998) (internal citation omitted). "If the facts alleged in the complaint fail to bring a claim within the policy's coverage, the insurer has no duty to defend. *Collins Holding Corp. v. Wausau Underwriters Ins. Co.*, 666 S.E.2d 897, 899 (S.C. 2008)(*citing S.C. Med. Malpractice Liab. Ins. Joint Underwriting Assn. v. Ferry*, 354 S.E.2d 378, 380 (S.C. 1987). In reviewing the complaint, a court must look beyond the labels assigned by the parties "to the acts themselves which form the basis of the claim against the insurer." *Id.* (citing *Prior v. S.C. Med. Malpractice Liab. Ins. Joint Underwriting Assn.*, 407 S.E.2d 655, 657 (S.C. Ct.App.1991).

Citing *City of Hartsville v. South Carolina Mun. Ins. & Risk Fin. Fund,* 677 S.E.2d at 578-79, MCE correctly states that the duty to defend may also be determined by facts outside of the complaint that are known by the insurer. *See also Clegg*, 661 S.E.2d at 798. MCE points to the answers given by the Plaintiff to Requests for Admissions in the underlying action to support their assertion that the Underlying Complaint contains claims alleging an accident. In her answers, Plaintiff stated that the claims in the Underlying Complaint assert some causes of action not arising out of alleged intentional conduct or alleged fraudulent or dishonest conduct. MCE contends that Plaintiff's responses to the Requests for Admission in regard to the Underlying Complaint establish that Plaintiff is alleging an accident.

First, the rule regarding extrinsic information or evidence means that the insurer must provide a defense if it has knowledge of *facts* which potentially bring the claim within the policy's indemnity coverage. Plaintiff's answers to the Requests to Admit are

7

not facts known to National Casualty which bring the claims within coverage. Second, here, the answers which Plaintiff provided to the Requests to Admit are nothing more than references to the causes of action alleged in the Underlying Complaint - i.e. the answers provide no new facts. However, even considering the Plaintiff's answers to the Requests to Admit, these characterizations of the claims, like those in the Underlying Complaint, are not determinative.

While the complaint does state a cause of action for negligence, the court is to look beyond the label of negligence and determine if National Casualty had a duty to defend. *Harvey*, 498 S.E.2d at 228 (holding that where a complaint mischaracterizes intentional conduct as negligent conduct, a court may find no duty to defend despite the label of negligence in the complaint). Looking at the factual allegations in the Underlying Compliant, Plaintiff alleges MCE sold 82-year old Kaufman, a vulnerable adult, thirteen cars between July 2, 2007, and March 9, 2009. (Compl. ¶ ¶ 9-21).[1] Plaintiff also alleges MCE knowingly and willfully exploited Kaufman and that MCE's actions included preying upon vulnerable adult consumers. (Compl. ¶¶ 25, 40). These factual allegations are specifically incorporated into the negligence cause of action alleged in the Underlying Complaint. (Compl. ¶45). The factual allegations alleged in the Underlying Complaint constitute intentional and deliberate acts with an alleged purpose of preying upon a vulnerable adult and they cannot be construed as accidental in nature. *See Collins*, 666 S.E.2d at 899-900.

MCE contention that the Underlying Complaint asserts causes of action for both intentional torts and negligence through the use of the phrase "should have known" is

---

[1] To be accurate, Kaufman was not adjudicated a vulnerable adult until May 5, 2009. (Compl. ¶ 7).

8

without merit because, "in the context of a cause of action alleging an intentional tort, which by definition cannot be committed in a negligent manner, the allegation of negligence is surplusage." *USAA Property & Cas. Ins. Co. v. Rowland*, 435 S.E.2d 879, 882 (S.C. Ct.App.1993)(internal citations omitted). While South Carolina law allows alternative pleading, a party cannot invoke coverage by couching intentional acts in negligence terms. *Harvey*, 498 S.E.2d at 227 (*citing South Carolina Med. Malpractice Liab. Ins. v. Ferry*, 354 S.E.2d 378 (S.C. 1987)). In the Underlying Complaint, Plaintiff alleges negligence per se and intentional factual allegations to support it. Plaintiff's characterization of the negligence claim and the use of the phrase "should have known" in the Underlying Complaint do not invoke coverage. Accordingly, the Commercial General Liability and Garage policies do not provide coverage because MCE's intentional actions as alleged in the Underlying Complaint do not amount to an "accident" or "occurrence" as defined in the policies.

### ii. E&O Endorsement

MCE contends that, in the Underlying Complaint, there are claims for violations of the truth in lending laws which would trigger coverage under the E&O endorsement. National Casualty contends that there are no allegations of truth in lending violations in the Underlying Complaint and, in any event, intentional and criminal acts are excluded under the E&O policy. As stated above, the factual allegations in the Underlying Complaint constitute intentional and criminal acts taken by MCE, which are excluded from coverage under the E&O policy. Accordingly, the E&O endorsement also does not provide coverage.

### iii. Customer Complaint Endorsement

The Customer Complaint Endorsement provides liability coverage for "defective

9

goods and services" arising out of "garage operations." The Customer Complaint Endorsement excludes coverage for "[a]ny dishonest, fraudulent, criminal or malicious act committed by an "insured." National Casualty contends that because Plaintiff in the underlying action has admitted she is not asserting a claim for defective goods or services, there is not coverage under this endorsement and, in any event, any such a claim is excluded. MCE contends the policy does not define "defective" and the dictionary defines defective as "imperfect in form or function." MCE then argues the Underlying Complaint alleges the services provided by MCE were imperfect. However, even assuming in the Underlying Complaint, Plaintiff alleges MCE provided defective services, as discussed above, the factual allegations constitute intentional and dishonest acts designed to take advantage of a vulnerable adult, which are excluded from coverage under the Customer Complaint endorsement.

### B. Bad Faith Cause of Action

Under South Carolina law, an insurer acts in bad faith when there is no reasonable basis to support the insurer's decision. *Cock-N-Bull Steak House, Inc. v. Generali Ins. Co.*, 466 S.E.2d 727 (S.C. 1996). But "[i]f there is a reasonable ground for contesting a claim, there is no bad faith." *Crossley v. State Farm Mut. Auto. Ins. Co.*, 415 S.E.2d 393, 397 (S.C. 1992). Here, as discussed above, National Casualty had reasonable grounds for contesting coverage and therefore National Casualty did not violate its duty to defend. Accordingly, National Casualty is granted summary judgment as to the bad faith claim.

### C. Declaratory Judgment Regarding Sharing Coverage Position Letters

MCE seeks a declaration that it has the right to share National Casualty's coverage position letters and other information regarding coverage with Kaufman and

invite her to amend her Complaint in the Underlying Action to trigger coverage. National Casualty has withdrawn its objection and argues MCE's request for a declaration is moot. MCE contends that they want a declaratory judgment so the they could "make sure in advance, that National Casualty would not later make a baseless charge of 'collusion.'" (Plaintiff's Mem. Opp. Def.'s Summ. J. Mot. - Dkt. # 41 at 33).

Declaratory relief may not be granted on a moot claim. *Nestler v. Bd. of Law Exam'rs of the State of N.C.*, 611 F.2d 1380, 1382 (4th Cir.1980). A party no longer suffers injury-in-fact, mooting the parties' controversy, when the opposing party ceases the conduct that gave rise to the injury. *Incumaa v. Ozmint*, 507 F.3d 281, 286–87 (4th Cir. 2007). However, where the party has a reasonable expectation that the opposing party will reinstate the offending conduct, the courts can consider such a dispute as "capable of repetition, yet evading review. *Fed. Election Com'n v. Wis. Right to Life*, 551 U.S. 449, 449 (2007). Only in exceptional circumstances will a court hear a claim that is "capable of repetition, yet evading review." *Los Angeles v. Lyons*, 461 U.S. 95, 109 (1983). The exception applies where (1) the challenged action is too short in duration to be fully litigated prior to cessation, and (2) there is a reasonable expectation that the same complaining party will be subject to the same action again." *Wis. Right to Life*, 551 U.S. at 449.

Here, there is no reasonable expectation that MCE would be subjected to the same action again. And, in fact, MCE contends that they are actually concerned with the threat of a collusion claim in the future. However, something more than the possibility that collusion may be alleged in the future is necessary to make this question one properly addressable by this court. The court must be able to say that the issue, upon its reemergence, will again be quickly rendered moot before a court can render a

11

decision with respect to it. *See Weinstein v. Bradford*, 423 U.S. 147, 149 (1975) (noting that the "capable of repetition, yet evading review" doctrine was developed in order to deal with matters which were quickly concluded, such that it was nearly impossible to litigate the validity of such matters prior to their becoming moot). Here, if a collusion claim is alleged at some point in the future, such an allegation can be dealt with by the court at that time. *See Linkenhoker v. Weinberger,* 529 F.2d 51, 53 (4th Cir.1975) (noting that a finding of mootness is appropriate where the issue might rise again but will be able to be speedily disposed of by the court at that time). Therefore, the court finds this issue is moot and the "capable of repetition yet evading review" exception is inapplicable.

## V. Conclusion

For the foregoing reasons, Plaintiff's MCE's Amended Motion for Partial Summary Judgment (Dkt. # 55) is **DENIED**, Defendant National Casualty's Motion for Summary Judgment (Dkt. # 36) is **GRANTED,** and this case is **DISMISSED with prejudice**.

**IT IS SO ORDERED.**

                                                                s/Timothy M. Cain
                                                                United States District Judge


Greenville, South Carolina
September 28, 2012